City of Racine, Respondent, v. Unified School District No. 1 of City of Racine, Village of Sturtevant, Village of North Bay, Village of Wind Point, Village of Elmwood Park, Town of Caledonia, and Town of Mt. Pleasant, Appellant.

*June 4—June 30, 1964.*

524

For the appellant there were briefs by *La France, Thompson, Greenquist, Evans & Dye* of Racine, and oral argument by *Kenneth L. Greenquist*.

For the respondent there was a brief and oral argument by *Jack Harvey*, city attorney.

GORDON, J.   On the surface, the question is who is entitled to the tuition money. The underlying question is whether "school property" in sec. 40.807 (4a) (b), Stats., refers to all the assets which are more fully delineated in par. (a) thereof. The theory of the plaintiff is that during the 1960–1961 school year the schools in the city were merely an arm of the city government and that tuition fees earned during this period constituted revenues which belong to the city of Racine. The theory of the defendant district, on the other hand, is that by sec. 40.807 (4a) (a) and (b) the right to the tuition passed to the defendant district pursuant to the sale agreement between the parties.

The trial court concluded that the words "school property" which appear in sec. 40.807 (4a) (b), Stats., have a restricted meaning and are not so broad as the enumerated items described in the preceding paragraph of the same statute. The latter paragraph describes the transfer to the unified school district of the following: "All property, assets, claims, contracts, liabilities and obligations."

The use of the words "school property" in par. (b) and the further limitation therein that such property be "situated in the unified school district at the time of its creation" tend to support the city's argument that the legislature did not intend to compel the city to give up its claims to the tuition fees which had been collected for the prior school year.

The defendant district urges that there is a different and valid explanation for the legislature's having used different terminology in the two paragraphs. According to the defendant, the term "school property" in par. (b) was used to reflect the difference between the types of pre-existing school districts. Under this view, a noncity school district was capable of transferring all its assets and liabilities, irrespective of the character thereof, to the unified school district, but a city which possessed assets and liabilities disassociated from the school system could not so transfer those assets or liabilities which were unrelated to the school operation.

The statute under consideration has not previously been construed by this court. A majority of the court concludes that the unified school district is entitled to the tuition fees. Sec. 40.807 (4a) (b), Stats., is construed by a majority of the members of this court as evidencing an intent by the legislature to include intangible school assets within the term "school property." In accordance with this construction, the unified school district assumes the outstanding obligations of the city which were issued for school purposes in exchange for all the school assets, including the tuition fees.

Those members of this court who are in the minority in this case will perhaps find agreement with Jeremy Bentham, who wrote in A Fragment on Government (1891), p. 103:

". . . it is never the Law itself that is in the wrong: it is always some wicked interpreter of the Law that has corrupted and abused it."

*By the Court.*—Judgment reversed.

FAIRCHILD, HALLOWS, and WILKIE, JJ., dissent.